Tampa Water Works Company, a corporation, *Appellant*,
v. Walter Wood, *Appellee*.
139 So. 800.
Division A.
Opinion filed February 23, 1932.
Petition for rehearing denied March 17, 1932.

*Knight, Thompson & Turner,* for Appellant;
*Mabry, Reaves & White,* for Appellee.

Ellis, J.—R. D. Wood & Company, a copartnership composed of Walter Wood and Stuart Wood, owned shares of the capital stock of the Tampa Water Works Company, a Florida Corporation. In March, 1914, Stuart Wood died and in 1920 the affairs of the copartnership being managed by Walter Wood as survivor, were placed in the hands of a receiver who transferred the stock in the Tampa Water Works Company to Walter Wood.

From 1902 to the date of Stuart Wood's death, 1914, the business of Tampa Water Works Company was managed by Stuart Wood, as a member of the copartnership of R. D. Wood & Company, which had control and man-

agement of the corporation. During his administration the corporation acquired several tracts of land nearby the City of Tampa, which were thought to be needed by the Corporation in preparing for a water supply for the city as it grew. The title to several of these tracts was taken in the name of Stuart Wood, although acquired by him in his capacity as manager of the corporation and for its use and benefit.

The number of shares of stock in the Tampa Water Works Company transferred to Walter Wood in 1924 was eighteen hundred and sixteen. Six hundred shares of the stock were held by R. D. Wood & Company which had originally been issued to Jeter & Boardman and by them assigned to R. D. Wood & Company as collateral security. R. D. Wood & Company held also two hundred and fifty shares in addition.

In 1923 the Tampa Water Works Company was sold to the City of Tampa. The legal representatives of Stuart Wood, who were the Provident Life and Trust Company of Philadelphia and Edward R. Wood, Junior, a nephew of Stuart Wood, managed the affairs of the Tampa Water Works Company until about 1921 when the Trust Company was discharged as executor, leaving Edward R. Wood, Junior, sole executor in actual control of the Tampa Water Works Company and he has continued in control since.

In June, 1927, Walter Wood, individually and as surviving partner of R. D. Wood & Company, exhibited in the Circuit Court for Hillsborough County his bill against the Tampa Water Works Company to close up its affairs, distribute its assets among the stockholders; that all officers or stockholders which have defrauded or wronged the corporation or received an undue proportion of its assets be required to account for the same; that a receiver be appointed for the corporation, who

shall take charge of all books, accounts, vouchers, money and deeds, papers and assets and that agents and officers of the corporation in possession of such documents and assets be required to deliver them to the receiver and be enjoined from interfering with the receiver in the discharge of his duties, who shall be authorized to prosecute all actions necessary to recover for the corporation the assets thereof dissipated and appropriated by Stuart Wood.

The bill alleges that Jeter and Boardman, who obtained the franchise to operate a water works plant in Tampa, procured the charter for the Tampa Water Works Company; that R. D. Wood & Company acquired and held as collateral security over six hundred of the one thousand shares of the Corporation outstanding and Wood & Company assumed management of it with Stuart Wood, a member of the copartnership, as President and Treasurer and he continued in active management until his death in 1914; R. D. Wood & Company acquired practically all the stock of the corporation; that Stuart Wood by certain transactions acquired, as more shares of the stock were issued, 2341 shares while there appeared in the name of Wood & Company 1816 shares of a total of 4247 shares; that since the death of Stuart Wood his representatives have assumed to manage and control the corporation but in the interest of the estate of Stuart Wood and their own interests and regardless of R. D. Wood & Company or the objects for which it became interested in the corporation. That Edward R. Wood, a nephew of Stuart Wood, one of the executors of Stuart Wood's will, was left in sole control of the corporation in 1921 and has been in actual control since; that some of the stock acquired by Stuart Wood and taken in his name was acquired with money of the corporation, likewise much of the land acquired and title

taken in his name and others was acquired by him for the use of the corporation and with its funds and such lands were subsequently sold by his executors and the proceeds of such sales applied to their own use and were not accounted for to the corporation; that money of the corporation was used by the executors of Stuart Wood to pay the taxes upon the lands; that some of the expense involved in investigating the lands so purchased was paid for with funds of the corporation which Stuart Wood did not charge to himself although he did charge himself with the actual cost of the lands and the carrying charges of it; that the representatives of Stuart Wood have sold many of the properties so acquired at great profit amounting to many thousands of dollars which were not accounted for to the corporation, although the property sold was owned by the corporation and held in trust for it by the persons so disposing of it or those in whose names the title had been taken.

Those transactions, it is alleged, constituted mismanagement of the corporation's affairs and amounted to a fraud upon the complainant as a stockholder. The bill alleges that the Tampa Water Works Company has closed its active business and nothing remains but to distribute its assets, and that the complainant has sought to obtain from the representatives of Stuart Wood, who control the assets of the corporation, a settlement of its affairs and an accounting of its assets but Edward Wood, Junior, the sole representative of Stuart Wood, continues in possession of such assets as the corporation's nominal head and is dissipating its funds and assets, denies to complainant or R. D. Wood & Company any right to participation in much of the Company's assets or to an accounting therefor and is squandering its assets under the pretended necessity of continuing the activities of the corporation.

An amendment to the bill alleges that Edward R. Wood, Jr., is not a resident of the State of Florida but resides in Philadelphia in the State of Pennsylvania, and the Provident Trust Company is a Pennsylvania Corporation with offices in Philadelphia, and there is no person in Florida the service of a subpoena upon whom would bind them; that since the filing of the original bill the Tampa Water Works Company has brought into the jurisdiction of the court ·and deposited in the Exchange National Bank about $180,000. And as that sum must be disposed of by the court it is essential to have before the court the representatives of the Stuart Wood estate and that the 1816 shares of stock described in the bill as in the name of R. D. Wood & Company have been transferred to Walter Wood, complainant. A second amendment to the bill alleges that such shares of stock were the equitable property of Walter Wood at the time of the death of Stuart Wood.

The Tampa Water Works Company answered the bill averring the existence of conditions necessitating the continuance of the activities of the corporation which required maintaining an office at Tampa. It denies that R. D. Wood & Company managed the Tampa Water Works Company and avers that the activities of Stuart Wood in the affairs of the corporation arose out of his official position with the corporation; that Walter Wood was a director of the corporation and continued as such long after the death of Stuart Wood; avers that the latter held a majority of the stock of the corporation; denied the allegations of fraud alleged to have been committed by Stuart Wood; averred that the parcels of land referred to were purchased with the knowledge and consent of the complainant and Stuart Wood fully reimbursed the corporation therefor and that all the lands have been sold except twenty-two acres but it was all

the individual property of Stuart Wood for the use of some of which the corporation paid rent to him. It denied that Stuart Wood received stock of the corporation paid for by it, but was acquired by him with his personal funds. It denies the wasting of the corporation's assets and payment of unnecessary salaries. Avers that the complainant is estopped from claiming that the affairs of the corporation have not been settled because of a suit commenced by him in the Circuit Court of Hillsborough County for an injunction to restrain the distribution of the corporation's assets and settlement of its affairs until a full and complete accounting could be obtained; that Walter Wood cannot maintain this suit as surviving partner of R. D. Wood & Company because a receiver duly appointed is in charge of the affairs of that copartnership.

Testimony was taken. There is a large volume of it. All the matters constituting the basis of the relief sought by the bill and the defense or matters urged by the answer were investigated and the master made a report of the evidence.

The court entered its decree holding that it was its duty to take charge of the affairs of the corporation for the purpose of administering the same and distributing the assets amongst the stockholders according to their rights. A receiver was appointed and empowered to institute such proceedings as may be necessary to obtain an accounting between the estate of Stuart Wood and the corporation and to recover such sums as may be justly due to it and to employ counsel to that end. That the sum of money brought into the jurisdiction of the court under stipulation of counsel should remain on deposit in the Exchange National Bank of Tampa subject to ordinary checking account for necessary purposes by the receiver, the checks to be signed by the receiver and

Mr. Griffin as President of the Bank but only on order of the court. The court reserved jurisdiction of the cause for such further proceedings as may appear to be necessary.

An appeal was taken from that decree by the Tampa Water Works Company and made returnable to this Court in January, 1931.

The questions presented by the brief are whether a stockholder in the absence of a statute may maintain a bill in equity to dissolve a corporation and cause its affairs to be placed in the hands of a receiver and taken from the officers of the corporation legally elected for that purpose.

Second, is not the appointment of a receiver ancillary and may the appointment be made when the closing of the corporation's affairs was prevented by the stockholder seeking the relief?

Third, does not the doctrine of laches apply in the case and operate against the complainant who appeared to acquiesce in the manner in which the affairs of the corporation had been conducted? New Rule 20, January, 1931.

This case was before his Court on an appeal from an interlocutory order overruling a demurrer to the bill of complaint. The order was affirmed. The law of the case, as made by the bill of complaint, was settled. The court, speaking through the writer, said: "In this case if the complainant can be afforded no relief, where the corporation has practically discontinued its business, is no longer engaged in the work for which it was chartered, but holds large assets which its president in name only is wasting in an unnecessary salary to himself and withholding the assets from those entitled to receive them, thus committing a fraud upon those for whom he holds such assets in trust, would be a denial of justice which it is the function of a court of equity to admin-

ister." See Tampa Water Works Company vs. Wood, 97 Fla. 493; 121 South. Rep. 789.

Such is the law of this case. Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516, 11 Am. St. Rep. 334; First Nat. Bank of St. Petersburg v. Ulmer, 66 Fla. 68, 63 South. Rep. 145; Cooney-Eckstein Co. v. King, 69 Fla. 246, 67 South Rep. 918; Peacock v. Our Home Life Ins. Co., 73 Fla. 1207, 75 South. Rep. 799.

The question therefore presented by the brief as the first question involved is no longer open for discussion or consideration. See Fidelity & Deposit Co. of Maryland v. Aultman, 61 Fla. 197, 55 South. Rep. 273; Hillsborough Grocery Co. v. Leman, 62 Fla. 208, 56 South. Rep. 684; Coombs v. Rice, 68 Fla. 499, 67 South. Rep. 143; Commercial Bank of Ocala v. First Nat. Bank of Gainesville, 80 Fla. 685, 87 South. Rep. 315.

There is evidence amply sufficient to support the allegations of the bill and the decree of the Chancellor appointing a receiver and under the settled rule obtaining in this jurisdiction such conclusions will not be disturbed on the evidence which may be conflicting. A discussion of the evidence therefore would be of no benefit. See Phinney v. Phinney, 77 Fla. 850, 82 South. Rep. 357; Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 553; Rosenthal v. First Nat. Fire Ins. Co. of United States, 74 Fla. 371, 77 South. Rep. 92; Smith v. O'Brien, 75 Fla. 252, 78 South. Rep. 13; Craft v. American Agr. Chemical Co., 81 Fla. 55, 87 South. Rep. 41; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Quinn v. Phipps, 93 Fla. 805, 113 South. Rep. 419.

As to the second question whether the appointment of a receiver is not ancillary and may such order be obtained when the evidence shows that the corporation was prevented by the complainant from closing its affairs, having decided in the first appeal that the receiver sought

in this case was not merely ancillary to preserve the assets of the corporation against the enforcement of some judgment but as a means to an end, Tampa Water Works Company v. Wood, *supra,* we have examined the evidence in vain for support of the proposition that the complainant had prevented the corporation from closing its affairs. The complainant sought in another proceeding to prevent the officials from making distribution of the assets of the company until there was an accounting, but it does not appear that any injunction was obtained nor was the suit prosecuted. In the former case we indicated that it was proper for the court in the exercise of its discretion to take possession of the properties to the end that they may not be dissipated by the fraud or wastefulness of the officers to the injury of those entitled solely to the benefits of their enjoyment.

As to the question of laches, we fail to discover any merit in the point made, as there is no evidence that whatever delay of which the complainant may have been guilty in bringing his case before the court has resulted in either injury or embarrassment or disadvantage to any one, particularly to the officers of the corporation charged with its mismanagement. See Chase v. Chase, 20 R. I. 202, 37 Atl. Rep. 804; Norton v. Jones, 83 Fla. 81, 90 South. Rep. 854; 21 C. J. 210.

Nor do we consider the complainant's demand a stale one.

The decree appealed from is affirmed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.